```
1                      UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF GEORGIA
2                             ATLANTA DIVISION

3

4    UNITED STATES OF AMERICA, )
                               )
5                              )
      -VS-                     ) DOCKET NO. 1:18-CR-00181-MLB-CMS
6                              )
     BENJAMIN JENKINS,         )
7                              )
          DEFENDANT.           )
8

9                  TRANSCRIPT OF TELEPHONE CONFERENCE
                 BEFORE THE HONORABLE MICHAEL L. BROWN
10                    UNITED STATES DISTRICT JUDGE
                          DECEMBER 23, 2019
11

12

13

14   APPEARANCES:

15   ON BEHALF OF THE GOVERNMENT:  (VIA TELEPHONE)
            PAUL JONES, ESQ.
16          ASSISTANT UNITED STATES ATTORNEY

17
     ON BEHALF OF THE DEFENDANT:  (VIA TELEPHONE)
18          SYDNEY STRICKLAND, ESQ.

19

20

21

22

23                    PENNY PRITTY COUDRIET, RMR, CRR
                          OFFICIAL COURT REPORTER
24                     UNITED STATES DISTRICT COURT
                             ATLANTA, GEORGIA
25
```

1                    (11:12 A.M.)

2          THE COURT:  All right.  Good morning, everyone.  We are

3    here on US vs. Jenkins, 18-CR-181.

4          Can I please have appearances starting with the

5    Government.

6          MR. JONES:  Paul Jones.  Good morning, your Honor.

7          THE COURT:  Good morning.

8          MS. STRICKLAND:  And good morning, your Honor, Sydney

9    Strickland for Mr. Jenkins.

10         THE COURT:  So I have read the pleading, and I wanted to

11   give you my thoughts on this.  Is Ms. Timmers on the phone?

12         MS. STRICKLAND:  No, your Honor, she is not.  I believe

13   she may already be on her way to Indiana on leave for the holiday.

14         THE COURT:  Well, I'm just going to say as a jumping-off

15   point, I do not understand why this was filed what sounds like on

16   her way out the door.  And I resent the fact that -- maybe I

17   shouldn't say I resent it.  It's a little shocking to me that

18   she's now not available to address that which she foisted on

19   everybody else.  And I read the one paragraph of explanation on

20   page 15, and I found it greatly lacking.

21         I don't understand -- I understand that y'all were

22   dealing with Mr. Jenkins's potential mental health issues, but I

23   thought that issue had been resolved some time ago.  Indeed at the

24   very beginning of the post-assessment briefing I think I got a

25   notice from you all that you were not pursuing that, so that can't

 1 | be the reason for the late notification.  I have to assume that
 2 | you all have been engaged in trial preparation prior to this week
 3 | or last week, so that really can't be the reason.
 4 |        And, frankly, the issues that you raise in this motion
 5 | are kind of evident from a very beginning -- I'm not suggesting by
 6 | saying evident that they are legitimate or they have a basis under
 7 | the law, but they seem to be the kind of issues that would jump
 8 | out at somebody on almost the very first reading of the indictment
 9 | and certainly not something that would take a significant level of
10 | "trial preparation" in order to reveal what you all claim to be
11 | lacking.
12 |        To the extent there's any lacking in the indictment,
13 | it's not something that would appear only after extensive trial
14 | preparation.  So I can't imagine why Ms. Timmers thought to file
15 | this on the Sunday before -- isn't that right?  Yeah.  She filed
16 | this on Sunday before I guess leaving town and I guess for her the
17 | last day of the year before she was going to be trying this case
18 | at the start of the second week of the year.
19 |        And I can't -- I'm especially flummoxed by this given
20 | the way the Government has tried to schedule this case, not with
21 | the short delay that was originally sought by the defendant but
22 | with a longer delay in order to accommodate the schedule of
23 | alleged victims who are home from college and would like to deal
24 | with this before returning to college.
25 |        So I don't know that there's much to be done about this,

1   Ms. Strickland, or if you want to respond on behalf of

2   co-counsel's efforts, but it seems to me that this was done at a

3   very inopportune time, but we now have to deal with that.

4          MS. STRICKLAND:  Your Honor, I -- do you want me to

5   respond, your Honor?

6          THE COURT:  If you want to, you can.  I've given you my

7   thoughts.  And if you have something that goes directly to point,

8   I will hear it, although it doesn't make much of a difference

9   because you all have raised issues that I think need to be

10  addressed regardless of when you've raised them and regardless of

11  how inconveniently you've done so.

12         MS. STRICKLAND:  Yes, your Honor.  I mostly just want to

13  apologize.  We got it filed as soon as we possibly could after

14  realizing the issue.  And I know that's not an excuse for any of

15  it, I think you're completely right in everything you said, and I

16  just want to apologize.

17         THE COURT:  Okay.  All right.  Well, now, it is maybe

18  Mr. Jones who is going to -- who I want to hear from next.

19         I have read this and when we look at the combined claim

20  of the insufficiency of the indictment or alternatively for a bill

21  of particulars, I am inclined, Mr. Jones, to -- I'm inclined to --

22  I'll tell you how I'm inclined to rule, but if you think that I am

23  wrong and that there is some benefit to briefing, I will also give

24  you time to brief it.

25         My initial idea when I got this was to give you until

```
 1   like the 2nd to review it, and then I would rule on it, I would
 2   have everybody here like the 6th.  But that only is a week before
 3   trial and I'm not sure -- then I went ahead and I read it again,
 4   and I am inclined to rule this way:
 5            I am inclined to deal with the issue raised through a
 6   bill of particulars in that to the extent there is certain images
 7   that you intend to base your claim on for each of the charges, I'm
 8   inclined to require you to identify those specific images.
 9            I'm also inclined to require the Government to identify
10   the type of conduct it is alleging.  There is in some of these
11   instances not a lot of difference in the words of the statute,
12   like employ or use.  And then there's not so much between persuade
13   and induce or entice.  There might be some difference with coerce.
14   But it seems to me as though the statute encompasses sort of at
15   least three spots along a spectrum from employ to coerce and that
16   the Government ought to identify where on the spectrum it's going
17   to fall in its allegations to the jury.
18            I don't expect the Government would be required to
19   identify one term, and it could say it's going to use all of them,
20   because as I've said, they're not so distinct that the -- an
21   argument or evidence of, let's say, employing could also be the
22   same as the evidence or the argument about inducing, enticing and
23   coercing.  But to the extent that there is some difference there,
24   I am inclined to suggest it.
25            And then for the attempted production, I think that
```

1  maybe there is a requirement to the extent there's not an image

2  that was sent, maybe some illumination is required in that

3  instance.

4         I am concerned as to the requirement of unanimous

5  verdict.  I do think that we can address that through jury

6  instructions and instructing the jury as to how they have to reach

7  their verdict.

8         MR. JONES:  Your Honor, I'm not sure that's ever -- I

9  think this is going to require quite a bit of briefing from the

10 Government.  This is -- I'm definitely put off by the extremely

11 late notice of this where this could not have just been filed two

12 months earlier but there was earlier counsel.  This is the type of

13 stuff that's dealt with usually in pretrial motions.

14         THE COURT:  Right.

15         MR. JONES:  So this is -- and we're getting deep into

16 trial prep, so this is a -- quite a diversion of energy to try to

17 respond to this.

18         I'm not sure -- I understand what the Court is saying.

19 I don't think there's any -- that this statute carries any

20 requirement of unanimity in -- for like what method the defendant

21 used.  And the problem is that with one victim, there can be

22 multiple methods used for -- depending upon the situation.  And

23 the -- so because this was not just a -- this is not just a

24 one-time thing where the defendant contacted each girl and then

25 had limited communications and then through one means obtained the

```
 1  child pornography from the victim, this is the -- there was
 2  ongoing communications with the girls.  And then the
 3  communications themselves, they could be coercive, they could be
 4  enticing and they could be using -- varying on -- it depends on
 5  the communications given the context of what's happening.
 6          So I think this is actually very -- it's quite difficult
 7  to -- even if the Court is inclined to grant a bill of
 8  particulars, that's going to be a herculean effort on the part of
 9  the Government to try to fit it in.
10          Also, I don't think -- like I said, I don't think
11  there's any legal requirement that the jury be unanimous as to
12  which method the defendant used.
13          THE COURT:  Let me be clear on that.  I think that
14  that's probably right.  I think that when they allege those words
15  they are not -- when the statute alleges those words, they are
16  identifying the conduct.  I don't think it requires unanimity as
17  to each -- as to the type of conduct we can -- to the extent that
18  that is required, we could identify that or deal with that at the
19  jury instruction portion.
20          But I say that in part because I don't think a jury -- I
21  think the jury is not required to pull apart what is induce or
22  what is entice or what is persuade.  I think that is all meant to
23  get at the same concept.  And those words are so similar in
24  meaning that I agree with you, that there's not a requirement of
25  unanimity.
```

1           But how about for the distribution counts for the

2   images, isn't there a requirement that there be some unanimity as

3   to an image -- maybe not -- if not unanimity, they need to know

4   what images you are going to allege to the jury constitute the

5   illegal images?

6           MR. JONES:  That the -- who needs to know, the defendant

7   or the jury needs to know?

8           THE COURT:  Well, the defendant.  So to the extent you

9   have distribution, that he did distribute at least one visual

10  depiction of a minor, you know, they might argue whether the

11  images are illegal in nature or whether they are that person or

12  what exactly -- you know, some other type of defense.  Aren't they

13  entitled to know the images that you are going to say -- even if

14  these are the images for this victim, these are the images for

15  that victim that we say are illegal in nature and content?

16          MR. JONES:  They're -- yes, they're entitled to know

17  that.  I don't think, though, that that's necessarily the point of

18  a bill of particulars.  In a normal distribution case involving

19  child pornography we might have tens of thousands of images and

20  videos and we're not going to just list out all of the -- even

21  just the file names, let alone the content, of every file itself.

22          And the -- so, I don't -- although they're entitled to

23  know it -- and this is where it becomes kind of tricky because we

24  can't turn over the evidence.  But I do want to make it clear for

25  the record that we have made the evidence fully available to

```
 1  defense counsel whenever they want to come in and see it.  They
 2  have come in several times.  And on a different case I did see
 3  Ms. Timmers and I told her that if she needs to come back and
 4  wants to come back and review the evidence, just let us know and
 5  we'll set her up.  So the evidence is available and has been
 6  available for defense counsel to review and defense counsel has
 7  come in to review the evidence so far.
 8          The distribution counts themselves, it's -- the -- I'm
 9  not quite sure where -- you know, how to respond to what the Court
10  is saying.  I don't think that -- you know, I don't think that
11  that can be a proper form for a bill of particulars in this case.
12          The -- you know, and also I would tell the Court that if
13  the Court is going to require the Government to file a bill of
14  particulars, we would want to do it under seal because it's going
15  to involve probably a lot of the information involving the victims
16  depending on -- whether we do it by file name or whether we do it
17  by the conduct that's alleged.
18          And the -- but, at any rate, though, the -- it's
19  problematic given the nature of this that we can't just turn it
20  over to defense counsel by statute, and we're not allowed to do
21  that.  And that we're -- they are sufficiently informed, though,
22  because even here what we've done, which we've usually -- we don't
23  do in many distribution counts, we've identified the victim by
24  initials, so that puts them on notice which victim we're talking
25  about.
```

1          And even though we're doing it by victim, I know that

2 defense counsel -- doing it by initials, I know that from previous

3 discussions defense counsel, they know the full names, so they

4 know exactly which victim we're talking about in each count.

5          THE COURT:  Right.  No, I get that.  And I frankly don't

6 think the date ranges are that difficult to manage.  They're not a

7 year.  I think most of them are about a month or two.  Maybe

8 there's one that's five months.  There's one that's a year.

9          MR. JONES:  There was one for very long-lasting conduct.

10          THE COURT:  You're right.  There is one that's at least

11 a year.

12          Let me just -- your proof on -- let's talk about the

13 distribution, okay.  Your proof on the distribution counts are --

14 is this something that -- is this an image that he e-mailed to

15 somebody or sent to somebody or posted somewhere?

16          MR. JONES:  These are images that he posted either on

17 various forums, either Pornhub or Twitter or Craigslist.  And we

18 expect that there's going to be testimony about -- from the

19 victims about the -- for example the Craigslist one, where the

20 victim -- the Government alleges that the defendant posted a

21 Craigslist ad.  He took screen shots of a lot of his conduct, and

22 so we have the screen shots from his iCloud account.  And there

23 will be testimony from -- the Craigslist ad itself says, I'm into

24 violent gang rape, hit me up if you're interested, and the victim

25 will testify when she got out of school, her phone was blowing up

1   with all these messages from guys saying they were willing to come

2   rape her.

3          THE COURT:  Okay.  All right.  Now, have you given the

4   defendant information from which they know what images were posted

5   when and to where?

6          MR. JONES:  Not on the distribution counts.  The

7   other -- the production counts, those are just the iCloud --

8   storage that's been inside there on his computer or more than

9   likely on the iCloud account.  We haven't identified exactly, but

10  there are only a handful of distribution counts, the conduct, how

11  this is distribution.

12         THE COURT:  You have not?

13         MR. JONES:  No, we have not given them like any written

14  information.  We've given them access to the materials.  And I

15  believe that in the materials we showed -- and this is with

16  Ms. Timmers.  I believe the materials we showed her included the

17  materials on distribution; for example, the screen grab of Pornhub

18  or Twitter.

19         THE COURT:  Okay.  So you have a precise posting that

20  supports each one of the distribution counts?

21         MR. JONES:  Yes, your Honor.

22         THE COURT:  And, I'm sorry, I don't have the indictment

23  right in front of me, I'm not at my desk.

24         Do you have it somewhere handy or do you have to print

25  it?  Give me just a second, I'm going to go grab my computer.

1        So let's look at Count 3, which I think is the first

2   distribution count.

3        MR. JONES:  Right.  I have to admit, I'm at home and I

4   don't have my -- usually I would refer to my prosecution memo to

5   pull me into exactly what the conduct was, and I don't have that

6   in front of me.

7        But I think that the Court is correct, it's 3

8   distribution counts, it looks like it's 3, 6 and 11.  I don't

9   recall exactly the conduct that's going on with Count 3.  I do

10  recall what's going on with Count 6.

11       THE COURT:  Let me go back -- let's talk about Count 6,

12  then.

13       Count 6 says that on one day in particular, July 5th,

14  that he distributed at least one picture of a specific woman or

15  girl, minor female, it doesn't say how he did it and it doesn't

16  say what image.  It certainly says when.  It doesn't say where and

17  it doesn't say what the image was.  But what I understand is that

18  in meetings with Ms. Timmers, you provided her the screen grabs

19  that would identify the image at issue and the location at which

20  it was posted?

21       MR. JONES:  Yes, your Honor.

22       THE COURT:  And how many -- are there multiple images

23  for these or just one?

24       MR. JONES:  I know for Count 6, I believe there are

25  multiple images.  I recall -- that one I remember because that's

1  the one where the defendant contacted the minor victim's

2  step-sister, who was an adult, and sent her the -- I think it was

3  more than one image, I think it was several images.  And the

4  step-sister actually took -- was the one who took the screen grabs

5  of those and later contacted law enforcement and then that's how

6  we obtained them.

7          THE COURT:  Ms. Strickland, is this news to you?

8          MS. STRICKLAND:  Your Honor, I have -- well, to answer

9  your question directly sort of, but I have a couple of questions

10 about it.

11         Like when we say that Ms. Timmers was told exactly which

12 images, I mean was she told in a direct manner like that, or was

13 it a situation like when we came in and viewed the iCloud and we

14 just came in and you guys just said, well, here's the iCloud?

15 Does that make sense?

16         MR. JONES:  She sat down with -- she sat down with Skye

17 Davis and the case agent going through all of the images and the

18 evidence victim by victim.

19         MS. STRICKLAND:  Uh-huh (affirmative).

20         The other things that --

21         MR. JONES:  I believe this is before you were on the

22 case.

23         THE COURT:  That's the problem with Ms. Timmers having

24 raised this issue and then left town, is we can't ask her that

25 question, which is what's so very inconsiderate of the way in

1  which she approached this.

2          Mr. Jones, how difficult would it be for these three

3  distribution counts, for you to put together a simple notification

4  that says something like Count 6 involves the distribution of

5  various images that -- various images on this -- on the date

6  alleged to X, to this person, the other one involves various

7  images on this date posted to Pornhub saying X or Craigslist

8  saying Y?

9          MR. JONES:  For the distribution counts, your Honor,

10 those are very finite and that would be pretty simple to do.

11 Maintaining our position, we believe that would be providing a

12 bill of particulars, but still for the record maintaining our

13 position that we don't believe that a bill of particulars is

14 required legally in this case.  But to get to the heart of the

15 question, for the distribution counts, that would be extremely

16 easy to do.

17          THE COURT:  So let's do that for distribution.  I don't

18 know if it's by way of a bill of particulars or just some

19 notification.  It doesn't seem like I need to grant a bill of

20 particulars because you have already provided this to Ms. Timmers,

21 but in an abundance of caution if you could just provide a

22 notification to them with that type of -- we've already got the

23 when, but if you could provide the what posted and the where

24 posted and either do that by a reference to the images or to -- I

25 guess that's the way to do it.  Is that the way to do it, image

1 names or something like that?

2          MR. JONES:  I think it's more -- the one dealing with

3 Count 6 there's no image name because the defendant sent the

4 images themselves over Facebook to these -- not Facebook, I think

5 it was Kik, over Kik messenger to the step-sister, so they don't

6 come with an image name, but I can still describe the number of

7 images that were sent and a description of the conduct and how

8 they were sent, what medium the defendant used to send them.

9          THE COURT:  I think that would be sufficient.

10          MR. JONES:  And what alias was -- if there was an alias

11 used.  In fact, I think one of these involved Pornhub, and I don't

12 think -- there's no name associated with Pornhub.

13          THE COURT:  You have the aliases already identified, and

14 I don't want to create a variance between any of that.  So if you

15 just identify the images in some way and the manner of the

16 distribution, I think that would be sufficient.

17          MR. JONES:  Okay.

18          THE COURT:  Do you agree, Ms. Strickland, that that

19 would be enough?

20          MR. JONES:  I'm sorry?

21          THE COURT:  I was asking Ms. Strickland if she thinks

22 that would be enough?

23          MS. STRICKLAND:  Oh, with the production counts, I think

24 so, as long as it's -- yeah, I was saying as long as it's like a

25 select few images because I think one of the issues that --

1          THE COURT:  Hold on, Ms. Strickland.  Ms. Strickland,

2    this is the distribution counts, not the production counts.

3          MS. STRICKLAND:  Sorry.  That's what I meant to say, I'm

4    sorry, that was just a slip of the tongue.

5          THE COURT:  Go ahead, finish what you were saying.

6          MS. STRICKLAND:  So I was just saying that overall, I

7    think one of the issues that we're having is that there are a lot

8    of photos in various states of undress and part of what we're

9    going to be arguing about possibly is whether they're sexually

10   explicit.  So if it's a more finite number of images, then I don't

11   think we'll have a problem, it's just when we get a situation

12   where we've got a whole bunch of images and we're not sure which

13   ones they're saying are sexually explicit.

14         THE COURT:  Okay.  So that will allow you to -- the

15   level of detail that Mr. Jones is going to give you tied with the

16   fact that he has made the images available to you or will make

17   them available to you again will provide you I think everything

18   you need to address everything you've raised on the distribution

19   counts.

20         MS. STRICKLAND:  Yes, as to the distribution counts, I

21   think that's correct, your Honor.

22         THE COURT:  So now let's turn to one of the production

23   counts.  Let me just read Count 1.  Let's take Count 1.  Is

24   Count 1 one of the attempted counts?  It didn't actually allege

25   that the image was transmitted.

1          MS. STRICKLAND:  Your Honor, just -- I have to

2   apologize, I don't have this in front of me either.  I am working

3   today, but I am in my car in front of the Hall County Jail, so I'm

4   a little limited to what I have in front of me.

5          MR. JONES:  Right.  And, your Honor, I don't -- the --

6   Count 1 is definitely -- I know, though, offhand that there are

7   definitely images of the productions there.  And there might

8   also -- the attempted portion I believe has to do with

9   oftentimes -- and this probably happened with the victim in Count

10  1, at some point the victim would cut off the defendants, and then

11  there would be various attempts to remake contact and the -- and

12  to re -- get the victim to re-engage in the behavior; or the

13  attempt also can be where the defendant is instructing the victim

14  what to do and -- but the victim doesn't send the photograph or

15  the video, it doesn't do what the defendant was instructing but

16  provides something different.

17          THE COURT:  Okay.  Well, I agree --

18          MR. JONES:  It's extremely messy, your Honor.  The

19  attempts can -- sometimes they -- and Ms. Strickland is right,

20  that sometimes there are images that -- the Government would call

21  these child erotica but they're going to be presented because they

22  are necessary to tell a story.  But some of the victims,

23  occasionally he would give them to -- send a -- not a child

24  pornography image, but say an image where the girl is wearing a

25  bra and underwear.  And then with that it would springboard from

1  that into getting the victim to produce clearly pornographic

2  images.

3           So I agree that -- with Ms. Strickland that there are

4  these images where -- that would not qualify as child pornography,

5  but they're necessary to tell the story about how the defendant

6  got from -- went from image number one and then image two, three

7  and four, which would be child pornography.

8           THE COURT:  Give me just one second, I'm just reading

9  over some more.

10          All right.  So Count 1 does not say that there was an

11  image made.  It says attempted to use or persuade, entice or

12  coerce KD to engage in sexually explicit conduct for the purposes

13  of producing a visual depiction of that conduct knowing that it

14  would be transported in interstate commerce -- oh, no, it does,

15  and it says it was transported, I'm sorry, I didn't read that in

16  that one as I did in the others.

17          So for each of these victims you have a series of images

18  that were sent, is that right?

19          MR. JONES:  That's correct, your Honor.  That was the --

20  our -- the point that we used to determine whether what would

21  be -- what we're going to charge.  So we don't have anybody where

22  it was just strictly, say, child erotica but the victim never --

23  the girl never followed through with any pornographic images.  And

24  so with all of these victims we definitely have images of what the

25  Government alleges is child pornography.

 1          THE COURT:  So, for example, for Count 1, for the victim

 2  named KD, how many images are we talking about for KD?  Because it

 3  seems to me as though this is far different from simply saying he

 4  enticed an unknown person to provide images?  You have identified

 5  KD and that takes it out from being a vague reference that would

 6  either be difficult to defend and identify or to protect against

 7  double jeopardy.  I mean, how many images are there with somebody

 8  you've identified as KD?

 9          MR. JONES:  Again, your Honor, I don't have the file in

10  front of me, but I can say that with all of these -- all of the

11  victims identified in the indictment, there is definitely more

12  than one image.  And for some of these there are -- it's -- I

13  think at the very least we're talking for any victim it could be

14  three, four, five, as well as for -- it could be in excess of --

15  depending upon conduct and how long the defendant was in contact

16  with the victim, well over a thousand.

17          THE COURT:  Okay.  That still is not some -- and you

18  will be -- at trial will the Government have to identify the

19  specific image that it claims was illegal in nature?

20          MR. JONES:  I -- well, we're putting -- we intend to put

21  the images into evidence, so I think at that point it's up to the

22  jury based on the instructions the Court gives to determine

23  whether it was illegal in nature.  So we're -- so we're not saying

24  that this image would be child erotica and this image would be

25  child pornography.

1          THE COURT:  Are you required -- is the jury required to

2     be unanimous as to an image being illegal?  Like are they going to

3     be required to determine that an image is illegal child

4     pornography as opposed to erotica?

5          MR. JONES:  They definitely -- obviously there's an

6     unanimity requirement, your Honor, but I don't believe they have

7     to go through image by image and say this is child pornography,

8     this is child erotica.  They don't have to identify which image

9     that they believe does qualify as child pornography.  There is

10    unanimity for the conduct here that the defendant either produced

11    or attempted to produce child pornography.

12          So, yes, there is unanimity but not to the point where

13    they have to identify which image.

14          THE COURT:  Ms. Strickland, what do you say about that?

15          MS. STRICKLAND:  I would disagree with that, your Honor.

16    I think they have to agree as to which image is sexually explicit.

17          MR. JONES:  I would like to see -- having done probably

18    about eight or ten child exploitation trials, I would like to see

19    authority for that because I've never seen that come up before.

20          THE COURT:  Okay.  Here's what I -- we can address that

21    because I am going to ask for briefing on that as well.  I suspect

22    it's not an issue that often comes up.  I suspect that most of the

23    cases that are brought, if they get to this point, they involve

24    something that no one would want to stand up and says is not

25    sexually explicit.  There might be erotica in there but that -- in

1  the context of all of them that there are some that probably

2  people are not arguing the -- whether they constitute illegal

3  images.  I don't know that, I'm just wondering that.

4         But what I would like to do is -- for these images --

5  for example, let's take again KD, Mr. Jones, you have already made

6  available to Ms. Timmers the images at issue with KD, is that

7  right?

8         MR. JONES:  That's correct, your Honor.

9         THE COURT:  Was it presented to her in a way that she

10  would identify these are the images involving KD?

11         MR. JONES:  Yes.  All the images were organized -- it

12  wasn't just like a file with all them thrown on, like one disc

13  with all the images thrown on and you click through them.  They

14  were actually organized in files by victim initials.  So whenever

15  she went to the KD -- the file marked KD, those are the images of

16  KD.

17         THE COURT:  And as far as the enticing, using,

18  persuading, this is all done in written form, correct?

19         MR. JONES:  Yes, your Honor.

20         THE COURT:  So, for example, for all of these folks

21  you've got between the dates alleged a series of electronic chats

22  back and forth with each other in one form or another?

23         MR. JONES:  That's correct.

24         THE COURT:  And all of that has been made available to

25  the defendant?

 1          MR. JONES:  That's correct.

 2          THE COURT:  Ms. Strickland, I'm sort of struggling to

 3  understand what else you need?

 4          MS. STRICKLAND:  Your Honor, just to clarify, we're

 5  talking about a different -- none of these images are just coming

 6  from the iCloud account?  That's more of a question for Mr. Jones.

 7          MR. JONES:  Are all the images coming from the iCloud

 8  account?

 9          THE COURT:  I thought they were.

10          MR. JONES:  Is that your question?

11          I believe that is true for the production counts.  For

12  the -- I do know Count 6 that we were talking about, the

13  distribution count, that was not on the iCloud account, that was

14  the step-sister taking screen grabs of her communications.

15          MS. STRICKLAND:  Right.  So we're not -- you're talking

16  about a different meeting with Ms. Timmers and not the one where I

17  was there and we were shown the iCloud account?

18          MR. JONES:  This is before you joined the case.

19          MS. STRICKLAND:  Okay.  Because as far as the iCloud

20  account, we haven't been told to my knowledge on the iCloud

21  account who was what and how they would be connected to any count.

22          THE COURT:  That's not what I understand.  I understand

23  that Mr. Jones has -- had some level of a folder system that he

24  made available to Ms. Timmers that said these are the images

25  related to KD, these are the images related to MM.

1              Is that right, Mr. Jones?

2              MR. JONES:  That's correct.

3              MS. STRICKLAND:  I'm just trying to make sure that I

4    understand because I was confused about that.

5              Okay.  Well, if there's a folder for each individual

6    person, I think -- I mean, that helps, but I don't think it solves

7    all of our issues because I think a lot of the problem is going to

8    be the fact -- like Mr. Jones is saying, that this is an ongoing

9    thing and when there are multiple images across multiple dates

10   then I do think we do have the double jeopardy problem.

11             THE COURT:  Why?  Because what he's alleging is activity

12   throughout this period of time.  He is alleging in Count 1 that

13   over a -- about a six-month period, from December '15 to May

14   of '16, that your client induced this girl to produce photos that

15   contained illegal images and that she, in fact, did that and they

16   were transported using an interstate facility.  And I think what

17   he's shown you, I think what he's given you and shown you -- and

18   correct me if I'm wrong, Mr. Jones -- is he's given you a series

19   of electronic communications, written out, not just toll records

20   but like chat communication, that he says would show the forcing,

21   employing, using, persuading, inducing, enticing, and then he's

22   given you a series of images that he says are the images.

23             Is that right, Mr. Jones?

24             MR. JONES:  That's correct, your Honor.

25             THE COURT:  So I don't understand what it is that you're

1   missing.  You're going to have to defend against these statements

2   that he says led to these images.

3          MS. STRICKLAND:  As far as defending against it, if we

4   know what it is and he has it written out like that, then I don't

5   think that is a problem.  I think the problem is that the unit of

6   prosecution of these offenses is -- I had a hard time finding any

7   law directly on point as to what the unit of prosecution is, but I

8   don't think it's a span of much because that's where we have the

9   double jeopardy problem, is that it can be -- or a multiplicity

10  problem even because it has all these images over such a wide time

11  span.

12         THE COURT:  Well, hold on.  So first of all as to double

13  jeopardy, I think that -- I do think there's a clear demarcation,

14  it's communications between two people during this period of time

15  that led to images that have been identified to you.

16         MS. STRICKLAND:  Uh-huh (affirmative).

17         THE COURT:  And as to the verdict, if there is a need

18  for unanimity in the verdict as to a specific image or if you

19  believe there is as to the manner, for example, enticing or using,

20  we can deal with that at trial if you have authority to support

21  that position.

22         MS. STRICKLAND:  Uh-huh (affirmative).

23         THE COURT:  Right?

24         MS. STRICKLAND:  Well, I agree with that part, yes.

25         THE COURT:  Okay.

1          So I guess, Mr. Jones, the question that would remain to

2   me is how difficult would it be for you to provide additional

3   notice of the images for each of the substantive -- each of the

4   production counts?

5          MR. JONES:  That's going to be -- well, what type of

6   notice is the Court asking about?

7          THE COURT:  I'm thinking like file names.

8          MR. JONES:  File names and the conduct?

9          THE COURT:  Just file names.

10         MR. JONES:  That's going to be -- pardon me?

11         THE COURT:  Just file names.

12         MR. JONES:  The file name itself I think would probably

13  be easy enough, but I don't think it's going to satisfy defense

14  counsel if the Government says that file 26439.jpg is -- is --

15  contains what the Government alleges is child pornography.

16         THE COURT:  Why?

17         MR. JONES:  Because it's just a series of numbers.  The

18  file names -- this is not like some other child pornography cases

19  where the file name is descriptive of what the content is.

20         THE COURT:  No, no, I get it.  I get it, but it is their

21  obligation to arrange a time where they can come see what the

22  image is.  And you have to give them the information.  You don't

23  have to give them the information in a way that gives it all at

24  one location but -- particularly for double jeopardy.  If you were

25  to identify simply the file names, file MMX1, MMX2 through MMX30,

1  that would allow them to come to your office and look at those

2  files and if they want to raise an issue, well, we don't think

3  MMX28 is child pornography, we think it's erotica, then they can

4  do that; or they could say MMX35 was not produced by this woman or

5  MMX32 was not sent in interstate commerce, they could do all of

6  that, it would protect them against double jeopardy later, but it

7  would allow them when they read the chats to have that in mind,

8  and I think it does everything that they're entitled to do.

9        Is there anything that would be lacking from that,

10  Ms. Strickland?

11        MS. STRICKLAND:  I -- let's see.  I think that would

12  be -- I think that would be very helpful in getting answers to our

13  questions, yes.  I still think we might have a problem with the

14  unit of prosecution in the indictment, so I don't necessarily want

15  to say that we don't want to maintain that, but I think if we can

16  identify the images at issue and the conduct -- well, I guess if

17  there's an image that we've confirmed with everything, then

18  identifying the issue (sic), yes, would help us as far as

19  preparing our defense.

20        THE COURT:  So, Mr. Jones, I would suggest that's all

21  the Government needs to do.  You do not need to try to describe

22  the images in any way.  I think you ought to identify the images

23  that you would introduce to the jury as to each count and that you

24  would argue are the images at issue in that count, and then they

25  can arrange -- to the extent that they don't remember and that

1  they want to actually raise an issue about the adequacy of the

2  offending material, they can arrange to come back to your office

3  and review them.

4         But I do agree that this is -- I'm trying to do it in a

5  way that does a couple of things; number one, gives the defendant

6  what I think they need.  I'm not -- I think I agree with you,

7  Mr. Jones, the way this has progressed so far is probably

8  unnecessary to grant all of this, but Ms. Timmers has raised the

9  issue.  And the way that you have done it with her in the past, it

10 seems like you have provided all of that to her, but for purposes

11 of a record there's no documentation of that.  And so if some day

12 a higher court is asked to review it, the fact that you simply say

13 I gave it to Ms. Timmers in a folder -- now at least we have that

14 on the record, but I do think we need to think about a review in

15 case that comes up how would we -- how would it be documented that

16 you did that.

17        So I would -- if it is not overly burdensome, I think

18 the Government ought to list just the image names or some

19 identifier of the image for each one of these counts, and then the

20 defendant can take advantage of their opportunity to come review

21 them again.

22        MR. JONES:  Okay.  I think that should be pretty easy to

23 do.  So the -- I would ask, your Honor, though, that the -- that

24 the -- we be allowed to file this under seal given the fact that

25 we'll be using -- identifying images by victim and still using the

1    initials.

2              THE COURT:  That's fine.

3              MR. JONES:  But I just want to make sure that it doesn't

4    become a public document that can ever get back to the victim and

5    can be used against the victim somehow.

6              THE COURT:  I think that is totally fine.  I think

7    that's appropriate to do.  Any objection to that, Ms. Strickland?

8              MS. STRICKLAND:  Not at all, your Honor.

9              THE COURT:  So why don't you do that.  I really -- I

10   really want to try to keep this on pace given the victims'

11   situation and their desire to get this behind them, as well as

12   their desire to do this when some of them are home from college

13   and it's less disruptive, and also making sure that the defendant

14   gets that to which he is entitled.  And I think that this -- this

15   limited information strikes that right balance.

16             MR. JONES:  And, your Honor, just -- I think it's pretty

17   clear from what I was saying earlier, even if we believe there's

18   something -- well, we can agree with defendant that there might be

19   an image that qualifies as child erotica, the Government still

20   intends to introduce it into evidence because we believe that

21   the -- it tells a story about why did -- how the defendant

22   obtained first child erotica but then later got child pornography.

23             THE COURT:  100 percent agreed.

24             MR. JONES:  Just by saying something is not child

25   pornography, the Government is not conceding that it is not

1  admissible at trial, it's to let the jury know what's going on in

2  this case.

3          THE COURT:  I agree with that.  I agree with that.  I

4  think that what you need to do is identify the images that would

5  be the basis for a conviction knowing that other images that have

6  been provided or made available -- I guess made available, not

7  provided, made available to the defendant might still be

8  admissible even if not identified in your notification, they might

9  be admissible or would likely be admissible in order to put the

10 relationship in context.

11         MR. JONES:  That's right.  Okay.

12         THE COURT:  All right.  So I don't -- I think that the

13 notice you give should be just that subset that you believe would

14 form the basis for a conviction.

15         MR. JONES:  Okay.  I should be able to put that

16 together.

17         THE COURT:  All right.  So are we clear --

18         MR. JONES:  That and the distribution counts should not

19 be too difficult to put together.

20         THE COURT:  All right.  Very well.  I will -- Mr. Jones,

21 will you -- when will you be providing this?

22         MR. JONES:  I'm hoping I can get it done by the end of

23 the week.

24         THE COURT:  Okay.  That would be great.  I want

25 everybody to do what we can to make sure that this trial sticks

1  because of the things that I've said before.  And we will be

2  available for that, but I expect everybody to raise issues or

3  concerns expeditiously and we will deal with them in the same

4  manner.  I do want you all --

5           MS. STRICKLAND:  Your Honor.

6           THE COURT:  Yes, go ahead.

7           MS. STRICKLAND:  I'm sorry.  I did have one other

8  question since we're all here and on the record, and it's for

9  Mr. Jones.  Ms. Timmers said that she got a disc in the mail on

10 Friday.  I was wondering if that was anything new?

11          MR. JONES:  It is but I think it's a demonstrative

12 charge if I recall correctly.

13          MS. STRICKLAND:  Demonstrative, okay.  Got you.  Thank

14 you.

15          MR. JONES:  And I'm sure they've encrypted everything,

16 but it's always with the same password.

17          MS. STRICKLAND:  Okay.  Great.  Thank you.

18          THE COURT:  So, Mr. Jones, you will identify the images

19 at issue in the production or attempted production counts of the

20 indictment.  You will then identify the images and/or means of

21 distribution for the distribution counts.

22          MR. JONES:  Yes, your Honor.

23          THE COURT:  And, again, it need not be more than the

24 name of the image and/or for the distribution count the name of

25 the image and the platform of publication.

1           MR. JONES:  All right.

2           THE COURT:  All right.  I do want you all, both, to

3   anticipate the need for argument and authority to the Court on the

4   unanimity issue, okay?

5           MS. STRICKLAND:  Yes, your Honor.

6           THE COURT:  Whether or not the jury is required to be

7   unanimous as to a specific image violating the law, I want you all

8   to be ready to brief this on the first or second day of trial,

9   okay?  It might affect -- if the law is against you, Mr. Jones, it

10  might affect the way in which you try the case or the way in which

11  you at least -- are we going to be giving -- we're going to be

12  displaying these images to the jury, right?

13          MR. JONES:  Yes, your Honor.

14          THE COURT:  I think we talked about it.  At that point

15  I'm going to clear the courtroom of anybody else, right?

16          MR. JONES:  The Court has the authority to do that to

17  protect the victims, minor victims.

18          THE COURT:  I'm going to do that.  Unless there's some

19  strenuous objection and basis for it, I'm going to do that.

20          MS. STRICKLAND:  I don't believe we have any objection,

21  your Honor.

22          THE COURT:  But it might affect -- Mr. Jones, if I were

23  to rule against you, that might be something that you want to know

24  early on because of the way in which you present the images to the

25  jury, so just think about that.

1          MR. JONES:  Yes, your Honor, I will.

2          THE COURT:  Okay.  Thank you all very much.

3          Ms. Strickland, I know this is not something that you

4    brought to us, so I hope that you take my words not towards you.

5          MS. STRICKLAND:  Well, thank you, your Honor.  And I do

6    appreciate you considering this and getting on the phone with us

7    this morning.  I'm sorry to take up so much of the Court's time,

8    and I really do appreciate it.  You all have a Merry Christmas.

9          THE COURT:  You all, too.  Thank you.

10         MR. JONES:  Thank you.

11              (PROCEEDINGS REPORTED WERE CONCLUDED)

12              _____

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT

4    NORTHERN DISTRICT OF GEORGIA

5

6        I do hereby certify that the foregoing pages are a true and

7    correct transcript of the proceedings taken down by me in the case

8    aforesaid.

9        This the 10th of January, 2020.

10

11

12

13

14

15

16    _____

17        PENNY PRITTY COUDRIET, RMR, CRR
         OFFICIAL COURT REPORTER

18

19

20

21

22

23

24

25