IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL ACTION NO. |
| ) | |
| V. ) | 1:18-CR-181-MLB-CMS |
| ) | |
| ) | |
| BENJAMIN JENKINS ) | |
| ) | |

**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

COMES NOW, Defendant BENJAMIN JENKINS, by and through undersigned counsel, and submits the following Supplemental Sentencing Memorandum for the Court's consideration in addition to his Sentencing Memorandum and attachments.[1]

I. <u>Mr. Jenkins objects to the proposed sentencing testimony from DHS Special Agent Eric Greene.</u>

Based on conversations with the government at the end of last week, Mr. Jenkins understands that the government intends to call Special Agent Greene at the sentencing hearing to testify about his investigation. Mr. Jenkins objects to this proposed testimony on multiple grounds based on his

---

[1] Mr. Jenkins files this Supplemental Sentencing Memorandum in light of new information learned at the end of last week. Mr. Jenkins seeks to provide the Court with as much notice as possible regarding his objections for the sentencing hearing.

understanding of the testimony and the government's intent in presenting the evidence: (1) the testimony is not relevant to any sentencing factor; (2) the testimony is not reliable evidence; (3) Mr. Jenkins has not been given proper notice of the evidence to satisfy due process; and (4) the testimony constitutes unnoticed expert testimony that is not reliable.

    a. <u>Agent Greene's testimony is not relevant to any of the issues before the Court.</u>

First, testimony about Agent Greene's investigation is not relevant evidence. There are no disputed factual issues in the Presentence Investigation Report ("PSR") and thus no need for the government to prove any facts supporting the guideline calculations therein. *See* U.S.S.G. § 6A1.3(b) ("The court shall resolve *disputed sentencing factors* at a sentencing hearing in accordance with Rule 32(i)")(emphasis added); Fed.R.Crim.P. 32(i)(2) ("The court may permit the parties to introduce evidence *on the objections*" to the PSR) (emphasis added). Additionally, based on what Mr. Jenkins knows about the intended testimony, the evidence would not constitute relevant conduct, and the government apparently agrees given that it did not ask for this information to be included in the PSR.

Furthermore, Agent Greene testified at trial, and the Court can consider that testimony when determining the appropriate sentence.

2

Because his testimony is not relevant, this Court should exclude Agent Greene's testimony at sentencing.

    b. <u>The proposed testimony by Agent Greene is inherently unreliable, such that Mr. Jenkins' due process rights would be violated if he were allowed to testify.</u>

The "defendant's primary due process interest ... is the right not to be sentenced on the basis of invalid premises or inaccurate information." *United States v. Plasencia*, 886 F.3d 1336, 1343 (11th Cir. 2018). Additionally, due process requires that a criminal defendant have adequate notice of, and an opportunity to contest, any facts used to support his penalty. *Id.*

While hearsay evidence may be considered in sentencing, due process requires both that the defendant be given an opportunity to refute it and that it bear minimal indicia of reliability. *United States v. Rodriguez*, 765 F.2d 1546, 1555 (11th Cir.1985). These protections apply not just to hearsay testimony but also to any information presented at sentencing. *United States v. Giltner*, 889 F.2d 1004, 1007 (11th Cir. 1989). In the supervised release context, where, like sentencing, the Rules of Evidence do not apply but the requirement of reliable evidence does, the Eleventh Circuit has additionally required courts to "balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation" in deciding

whether hearsay testimony is admissible. *United States v. Frazier*, 26 F.3d 110, 114 (1994).

While Mr. Jenkins has limited information regarding Agent Greene's proposed testimony (a factor discussed further below), based on what is known, the evidence that the government intends to produce through Agent Greene is speculative and unreliable. Mr. Jenkins understands that the testimony will be that, during Agent Greene's investigation, he and another agent contacted persons they believed may have been victims of Mr. Jenkins, other than those included in the PSR. Relevant here, the people whom the agents spoke to either explicitly denied being a victim of Mr. Jenkins and/or knowing Mr. Jenkins at all, or declined to answer the agents' questions. Mr. Jenkins understands that the government intends to assert, either through Agent Green's testimony or argument, that these unknown people were, in fact, victims—despite the fact that they either explicitly denied that they were victims or declined to answer the agents' questions.

This is clearly rank speculation that violates Mr. Jenkins' due process right not to be sentenced "on the basis of invalid premises or inaccurate information." *Plasencia*, 886 F.3d at 1343. The government's premise seems to be that everyone that agents spoke to in the course of their investigation

4

was a victim of similar conduct, no matter what that person actually said. This conclusion is apparently applicable to a whole swath of unknown people, based on no individualized considerations. Mr. Jenkins' understanding is that the conversations were limited in scope and duration, and conducted exclusively via phone, such that the government cannot point to any information as to any specific individual suggesting that she was lying when she denied being a victim. Any testimony suggesting that every person who denied being a victim or declined to speak with the agents was in fact a victim cannot be reliable evidence.

The proposed testimony will also rely on hearsay that cannot be shown to be reliable. There is apparently no information available, other than Agent Greene's memory, establishing who these people the government wants to call victims are. Moreover, the government apparently seeks to introduce not just hearsay, but double hearsay through Agent Greene. The government seeks to have Agent Greene testify not just about his own interviews, but about interviews conducted by at least one other agent. Therefore, there are at least two levels of hearsay (what the alleged victim told the other agent and what the other agent told Agent Greene). These layers of hearsay make the testimony even less reliable than normal.

The Eleventh Circuit has held that it is improper for an agent "to speculate about what was transpiring in phone calls and messages or to 'interpret' uncoded, ordinary language. *United States v. Hawkins*, 934 F.3d 1251, 1264 (11th Cir. 2019). This is exactly what the government apparently seeks to do—use Agent Greene to interpret the answers of anonymous people to mean the opposite, or to interpret their declining to answer to mean that the answer was yes. This cannot be permissible, whether at trial or in sentencing. Therefore, this Court should prohibit the testimony and decline to consider it as it determines the appropriate sentence for Mr. Jenkins.

c. <u>The government has not disclosed *any* materials to support the agent's testimony, such that allowing this testimony would violate Mr. Jenkins' due process rights.</u>

Mr. Jenkins has *no information* about this alleged investigation or the people whom the agents may have spoken to. Mr. Jenkins has specifically requested any reports or notes regarding this portion of the investigation, and has been told that none exist. Mr. Jenkins therefore has no way to challenge this testimony or to contact the people the agents allegedly spoke to. If it is true that Agent Greene has no notes of this investigation conducted

by himself and another agent several years ago, this fact also demonstrates the unreliability of his testimony.

First, Mr. Jenkins submits that the agents should have been taking notes in the course of their investigation in any circumstance, but especially if they intended to rely on that investigation in later proceedings such as this sentencing. It is absurd that federal agents spoke to any alleged victims and did not document this in any way, but yet, the government still seeks to introduce testimony about this investigation. Further, the lack of notes means that Agent Greene will be relying solely on his memory of phone calls that occurred approximately 2.5 to 3 years ago in the course of one of many investigations that the agent was surely involved in during and after this time. Such testimony is inherently unreliable. This Court should reject the government's attempt to present testimony when it has not disclosed any materials in support of that testimony, apparently because no such materials exist.

    d. <u>The Court should exclude this testimony because the government did not give sufficient notice of the proposed testimony, such that the admission of the testimony would violate Mr. Jenkins' due process rights.</u>

Mr. Jenkins did not have any notice that the government intended to present this testimony at sentencing until the Thursday before the Tuesday

sentencing hearing, when undersigned counsel reached out to the government. *See Plasencia*, 886 F.3d at 1343 ("due process requires that a criminal defendant have adequate notice of, and an opportunity to contest, any facts used to support his penalty."). This extremely late notice, in addition to the factors discussed above, violates Mr. Jenkins due process rights.

Further, Agent Greene's testimony would constitute unnoticed and unreliable expert testimony. It appears that the government will seek to admit testimony from Agent Greene that, based on his knowledge and experience, the people who denied being victims were in fact victims. This is expert testimony. *See* Fed.R.Evid. 702 (a witness "qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony where "the expert's ... technical[ ] or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."); Fed.R.Evid. 701(c)(lay opinion testimony is admissible only if it "is ... not based on ... technical[ ] or other specialized knowledge within the scope of Rule 702."). While the Rules of Evidence generally do not apply at sentencing, the Eleventh Circuit has applied Rule 702 in the sentencing context, likely because the Rule is aimed at ensuring the reliability of expert

testimony and reliability is also required to provide due process in the sentencing context. *See United States v. Brey,* 627 F. App'x 775, 781 (11th Cir. 2015).

Mr. Jenkins first objects that this expert testimony has not been adequately noticed, and consequently, he has not had an adequate opportunity to secure his own expert or otherwise rebut the proposed testimony. Further, there has been no explanation provided as to the basis of this expert conclusion that people who denied being victims or declined to answer were, in fact, victims. Finally, the testimony is inadmissible expert testimony because it is not based on sufficient facts nor the result of the application of reliable principles and methods applied to specific facts. *See* Fed.R.Evid. 702. Based on the above, Mr. Jenkins objects to the government calling Agent Greene as a witness in the sentencing hearing.

> II. <u>Just last week, this United States Attorney's Office recommended a sentence of 29 years for remarkably similar conduct, demonstrating that the government's recommendation in this case is unreasonable.</u>

On Thursday, September 17, 2020, Edward Okenica was sentenced in NDGA case number 2:20-cr-00007-SCJ to 28 years imprisonment based on his conduct that is almost indistinguishable from the conduct in this case. This sentence was imposed after the United States' Attorney for the

Northern District of Georgia recommended a sentence of 29 years for the 11 counts of producing child pornography. According to U.S. Attorney B.J. Pak's press release, Mr. Okenica "victimized dozens of girls as young as 12 years old from his home."[2] The press release summarizes the conduct as follows:

> For at least two years prior to his arrest in August 2019, Okenica used Snapchat and Instagram to solicit sexually explicit photographs and videos from dozens and dozens of young girls. Okenica convinced many of these girls to send him sexually explicit photos and videos by offering them "bribes" in the form of gift certificates or other token forms of payment. He also frequently demanded that these girls perform sexually humiliating acts, including placing various household objects in their bodies. In many instances, the girls would grow uncomfortable and beg Okenica to stop. But Okenica was indifferent to their pleas, even when the girls cried or harmed themselves.
>
> If the girls expressed an unwillingness to keep producing more photos or videos, Okenica bullied, threatened, and extorted the girls to force them to continue. He threatened to share their videos online with the girls' friends and/or family, and in multiple cases did in fact carry out his threats. If a girl blocked Okenica on Snapchat or Instagram, he frequently established new accounts to find the child and demand that she send him more sexually explicit photographs and videos.

---

[2] Press Release, Dept. of Justice, <u>Georgia man sentenced to 28 years for producing child pornography and sextorting dozens of girls online</u> (Sept. 17, 2018) *available at* https://www.justice.gov/usao-ndga/pr/georgia-man-sentenced-28-years-producing-child-pornography-and-sextorting-dozens-girls (last visited September 20, 2020) (attached as "Attachment 1").

> Investigators positively identified approximately 36 victims in the United States and overseas. But investigators estimate that Okenica coerced as many as 100 minor victims to send him child pornography.

This conduct is remarkably similar to Mr. Jenkins' conduct in this case. The United States Attorney for the Northern District of Georgia determined that a sentence of 29 years was sufficient punishment and would provide adequate deterrence for this conduct in Mr. Okenica's case.[3] Yet the same United States Attorney's Office is requesting an 80-year sentence here—more than 50 years higher than the sentence request for Mr. Okenica. The government is asking this Court to sentence Mr. Jenkins to die in prison.

Mr. Jenkins submits that this demonstrates that the government's recommendation of 80 years in this case is disproportional, at best. While Mr. Okenica pled guilty and Mr. Jenkins proceeded to trial, it cannot be so that the decision to exercise Mr. Jenkins' constitutional right to trial justifies this extreme discrepancy in the sentencing recommendations made by the same U.S. Attorney's Office.

Respectfully submitted this the 21st day of September, 2020.

| | |
|---|---|
| */s/ Sydney R. Strickland* | */s/ Sarah M. Timmers* |
| Sydney R. Strickland | Sarah M. Timmers |
| Ga. Bar No. 418591 | Ga. Bar No. 122723 |

---

[3] Northern District of Georgia case number 2:20-cr-00007-SCJ, doc. 34-1 (attached as "Attachment 2").

| | |
|---|---|
| Strickland Webster, LLC | Sarah M. Timmers, Esq. |
| 830 Glenwood Ave SE | 279 Washington Avenue |
| Suite 510-203 | Marietta GA, 30060 |
| Atlanta, GA 30316 | 470-755-1049 |
| (404) 590-7967 | sarah@sarahMtimmers.com |
| sydney@stricklandwebster.com | |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing pleading was filed by uploading it with the Northern District of Georgia's Electronic Filing System which will automatically serve opposing counsel with the pleading.

Dated: This 21st day of September, 2020.

<u>/s/ <i>Sydney R. Strickland</i></u><br>
Sydney R. Strickland<br>
Ga. Bar No. 418591

Strickland Webster, LLC
830 Glenwood Ave SE
Suite 501-203
Atlanta, GA 30316
(404) 590-7967
sydney@stricklandwebster.com